The STATE of Ohio, Appellee,

v.

DRAKE, Appellant.

[Cite as *State v. Drake* (1991), 73 Ohio App.3d 640.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56475.

Decided June 24, 1991.

*Stephanie Tubb Jones,* Prosecuting Attorney, and *Albin Lipold,* Assistant Prosecuting Attorney, for appellee.

*Paul Mancino, Jr.,* for appellant.

JOHN T. PATTON, Presiding Judge.

Defendant-appellant Joshua R. Drake ("defendant") appeals from his guilty pleas for seven counts of aggravated robbery (R.C. 2911.01).

Defendant was indicted on seven counts of aggravated robbery, with each count carrying gun and aggravated felony specifications. On May 17, 1988, defendant agreed to plead guilty to one count of aggravated robbery with a gun specification only, and the specifications on counts two through seven were dropped.

On September 27, 1988, defendant appeared for sentencing and made an oral motion to withdraw his guilty plea because he thought by dropping the specifications the charges would automatically be reduced from aggravated robbery to robbery.

The trial court denied defendant's request to withdraw his guilty plea and proceeded to sentencing. Defendant used obscene language in addressing the trial judge after sentencing. The trial judge held defendant in direct contempt of court and sentenced him to an additional six months' incarceration.

Defendant now appeals, assigning three errors for review:

"I. The defendant was denied due process of law when he was improperly sentenced by the court to a consecutive term of imprisonment of six months by reason of an alleged contempt of court.

"II. The defendant was denied due process of law when the court overruled his motion to withdraw his pleas of guilty.

"III. The defendant has been denied due process of law and equal protection of the law where, through no fault of his own, the court reporter notes from his plea have been destroyed and there is an inability to recreate a verbatim record of his plea thus entitling the defendant to a vacation of his conviction."

## I

Defendant argues he was denied due process of law when he was charged with contempt of court and sentenced to an additional six months' incarceration.

■ Our analysis must necessarily begin with the type of contempt contemplated herein. "Criminal contempt may be direct or indirect." *In re McGinty* (1986), 30 Ohio App.3d 219, 223, 30 OBR 377, 380, 507 N.E.2d 441, 445. Direct contempt is explicated in R.C. 2705.01, which reads as follows:

"A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

Hence, direct contempt may be summarily punished.

■ Indirect contempt is that which is committed outside the presence of the court. *In re McGinty, supra,* at 223, 30 OBR at 380, 507 N.E.2d at 445, citing *State v. Jaffrin* (App.1956), 74 Ohio Law Abs. 577, 2 O.O.2d 486, 136 N.E.2d 436.

Defendant erroneously contends that the trial court's finding of contempt was premised upon R.C. 2705.05(A)[1] when, in fact, the applicable statutory provision is R.C. 2705.01.

■ Defendant, just after being sentenced, engaged in the following dialogue with the trial judge:

"THE DEFENDANT: I wish to appeal.

"THE COURT: Well, talk to your lawyer. Your case is over, son. You are an aggravated robber, a damn criminal.

"THE DEFENDANT: F— you.

"THE COURT: Bring him back, please. Bring him back here, deputy. Bring him back here.

"What did you say to me?

"THE DEFENDANT: You heard me.

"THE COURT: What did you say? Say it on the record.

"THE DEFENDANT: That is the way that you did it to me.

"THE COURT: What did you say, on the record?

---

1. That section reads:
 "(A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. * * *"

"THE DEFENDANT: You heard what I said on the record.

"THE COURT: Did you say, "F— me?

"THE DEFENDANT: That's your business.

"THE COURT: Well, f— you too. And I find you in contempt of court. Add six months consecutive.

"Now take him out. Add six more to that.

"THE DEFENDANT: F— that old mother f———.""

In this case, defendant's actions were done in open court and in the presence of the trial judge. Hence, the alleged contempt was direct in nature. *State v. Conliff* (1978), 61 Ohio App.2d 185, 189, 15 O.O.3d 309, 311, 401 N.E.2d 469, 473.

In *Conliff*, the court issued this caveat:

"Because of the summary nature of a direct contempt conviction, the court must be careful to guard against confusing actions or words which are contemptuous to the judge's personal feelings or sensibilities and actions or words which constitute punishable, criminal contempt of a summary nature because of posing an actual or imminent threat to the administration of justice. * * *" *Id.*, citing *In re Little* (1972), 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708, 710.

The vehemence of the language alone is not the yardstick for measuring the actions which constitute direct contempt. *Id.*, citing *Little*. "The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice." *Id.*

In the instant case, while this type of rude, ill-mannered verbal outburst is not condoned by this court, neither is it punishable under the law of direct contempt because the comments did not pose an imminent threat to the administration of justice. *Id.* Further, there is no indication the comments were in a boisterous tone or in any way disrupted the court proceedings. In fact, the comments were made at the end of the proceedings as the defendant was being removed from the courtroom.

We are, however, certainly sympathetic to the trial judge who endured the obnoxious remarks, but we fail to see that they constituted an imminent threat to the administration of justice. *Little, supra; Conliff, supra.*

Accordingly, the first assignment of error is well taken.

## II

In defendant's second assignment of error, he argues the trial court erred in overruling his motion to withdraw his guilty pleas. We do not agree.

Crim.R. 32.1, governing withdrawal of guilty pleas, provides:

"A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

 Generally, a motion to withdraw filed *prior* to sentencing will be freely allowed. *Eastlake v. DeNiro* (1984), 21 Ohio App.3d 102, 21 OBR 109, 487 N.E.2d 324, citing *State v. Peterseim* (1980), 68 Ohio App.2d 211, 22 O.O.3d 341, 428 N.E.2d 863. This does not mean, however, that a motion to withdraw a guilty plea will be granted automatically; a mere change of heart, for instance, is insufficient justification. *State v. Meade* (May 22, 1986), Cuyahoga App. No. 50678, unreported, 1986 WL 5954.

This court has held in a number of cases that despite the more lenient standard applicable to presentence motions to withdraw guilty pleas, an appellate court will reverse the trial court's denial only upon a showing of abuse of discretion. *Peterseim, supra,* at 213, 22 O.O.3d at 342, 428 N.E.2d at 865; *State v. Posta* (1988), 37 Ohio App.3d 144, 524 N.E.2d 920; *State v. Curtis* (Apr. 11, 1985), Cuyahoga App. No. 48635, unreported, 1985 WL 7956; *Meade, supra; State v. Robinson* (Sept. 17, 1987), Cuyahoga App. No. 52735, unreported, 1987 WL 17220; *State v. Hall* (June 18, 1987), Cuyahoga App. No. 53196, unreported, 1987 WL 13016.

In *State v. Pavlos* (Apr. 28, 1988), Cuyahoga App. No. 53772, unreported, at 6, 1988 WL 39320, this court held that the trial court did not abuse its discretion in overruling the defendant's guilty plea when the defendant claimed "he was under the mistaken impression that he would be sentenced only for eighteen months actual incarceration." The defendant claimed he did not understand the "consequences" of his plea, but he in no way maintained his innocence or argued the involuntariness of his plea. *Id.*

 Similarly, in this case, the trial court did not abuse its discretion in overruling defendant's motion to withdraw his guilty plea.

During the sentencing proceeding, defendant did not maintain his innocence. In fact, he even admitted to his acts of aggravated robbery, as the following excerpt reveals:

"THE DEFENDANT: So by pleading guilty to these charges, when they dropped the aggravated felony spec, I thought it automatically made it just a robbery. I did not realize or know that the charges are still standing against me for aggravated armed robbery and, therefore, I do not wish to plead guilty to aggravated armed robbery.

"THE COURT: You already did. You held up three stores with a gun, all of these places that you robbed?

"THE DEFENDANT: Yes, sir.

"THE COURT: Let me remind you. Let's see here.

"THE DEFENDANT: Which ones I robbed, your Honor?

"THE COURT: Yes.

"THE DEFENDANT: I made a statement and cooperated all of the way, in which I turned myself in.

"THE COURT: 'On 10–7–87, at 4:30 p.m. Harvey A. Kurtz was working behind the register at Nationwise Auto located at 11648 Lorain Avenue. As he was waiting on a customer, the Defendant entered the store, walked behind the counter, grabbed Mr. Kurtz by his right arm, shoved a .22 caliber handgun into his stomach. He told Mr. Kurtz to open the register, and the victim complied. The victim then gave the Defendant all of the bills in the register.'

"Remember that one?

"THE DEFENDANT: Yes, sir.

"THE COURT: You told me that you were guilty of that; is that right?

"THE DEFENDANT: That is from my understanding, sir."

Defendant does not challenge his plea as being involuntary. He merely asserts a "mistaken belief" that by dropping the gun and aggravated felony specifications, he thought it would have automatically reduced his charge to robbery from aggravated robbery:

"THE DEFENDANT: I thought, when the aggravated specifications were dropped—that I am not an attorney, I thought that I was pleading guilty to a robbery, sir.

"THE COURT: I explained all of those things to you when I took the plea.

"THE DEFENDANT: Well, that's what I thought that I was pleading guilty to, Your Honor.

"THE COURT: Okay. I am not going to allow you to change your plea.

"Anything that you would like to say before I sentence you?

"THE DEFENDANT: That's all that I can say, Your Honor."

Hence, the trial court did not abuse its discretion in overruling defendant's motion to withdraw his guilty plea, which was premised on a "mistaken belief" of a reduction in the charges.

Accordingly, the second assignment of error is overruled.

## III

In defendant's third assignment of error, he argues he is entitled to a vacation of his plea because the court reporter's notes detailing the plea hearing have been destroyed. We do not agree.

First, defendant, as appellant, carries the burden of providing a record for appeal. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 15 O.O.3d 218, 400 N.E.2d 384. If a transcript is "unavailable," an appellant has an obligation to provide a complete record pursuant to App.R. 9(C), (D) or (E). The appellant must comply with App.R. 9(C) in his or her direct appeal instead of asking for a new trial. *State v. Polk* (Mar. 7, 1991), Cuyahoga App. No. 57511, unreported, at 4, 1991 WL 30250, citing *State v. Griffin* (May 9, 1991), Cuyahoga App. No. 57673, unreported, 1991 WL 76021. The court should consider granting a new trial only after all reasonable efforts to comply with App.R. 9(C) have been made. *Id.*

This court in *Polk* reversed and remanded the trial court's decision and ordered a new trial because the transcript was unavailable *and* a statement of proceeding could not have been compiled. *Polk, supra,* at 5. The record reflected that the appellant made a good faith effort to reconstruct the record, in that his appellate counsel spoke with appellant and trial counsel but could not recall much of the testimony, legal issues and procedural steps at trial. *Id.* at 4–5. Moreover, the trial judge admitted he did not have an independent recollection of the testimony and stated that it was therefore impossible for him to make an intelligent ruling on the App.R. 9(C) statement. Hence, we concluded the trial judge abused his discretion in accepting verbatim the prosecutor's version of the trial when there was no way of knowing if it was proper or accurate.

However, in this case, there is no indication that defendant made any effort, let alone a good faith one, to reconstruct the record of his plea hearing. Defendant did not file a statement of the proceedings pursuant to App.R. 9(C). As such, in the absence of a record, the proceedings at the trial are presumed correct. *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523.

Moreover, the record that defendant provided is from his sentencing hearing. The record reveals that defendant did not proclaim his innocence, nor did he challenge his earlier guilty pleas as not being voluntary and knowing. In fact, he reaffirms his guilt to his acts of aggravated robbery. Further, the trial judge stated he explained the nature of defendant's plea at the plea hearing and this statement was not objected to by defense counsel. As such, we presume that the plea hearing was in compliance with Crim.R. 11.

Accordingly, the third assignment of error is overruled.

648

Judgment affirmed in part and reversed in part. Defendant's sentence for contempt of court is hereby vacated.

*Judgment accordingly.*

JAMES D. SWEENEY and HARPER, JJ., concur.